## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL CASE NO. 1:05CV-167-M**

**JAMES STUART FALLER, II**                                    **PLAINTIFF**

**V.**

**LARRY ROGERS, individually and in his official**
**capacity as Commonwealth Attorney for the State**
**of Kentucky**                                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Larry Rogers, individually and as Commonwealth Attorney for the State of Kentucky, to dismiss or, in the alternative, for summary judgment [DN 5]. Fully briefed, this matter is ripe for decision. For the reasons set forth below, the motion by the Defendant for summary judgment is granted.

### STANDARD OF REVIEW

Because both parties have presented substantial matters outside of the pleadings, the Court shall treat the motion to dismiss as one for summary judgment and dispose of the motion as provided in Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b)(6); Shelby County Health Care Corp. v. Southern Council of Industrial Workers Healthcare and Welfare Trust, 203 F.3d 926 (6th Cir. 2000). In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden

of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The inquiry under Fed. R. Civ. P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 251-52 (1986).  <u>See also</u> <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989).  It is against this standard that the Court reviews the Plaintiff's allegations.

## BACKGROUND

Plaintiff , James Faller, *pro se*, brings this action pursuant to 42 U.S.C. § 1983[1], 42 U.S.C. § 1981, and the Hobbs Act alleging that Defendant Larry Rogers in his individual and official capacity as Commonwealth Attorney for Russell County, Kentucky, deprived him of "money, property, liberty, [and] reputation" by engaging in continual and ongoing prosecutorial misconduct. (Compl. at ¶ 10).  Plaintiff and his family also assert state law negligent and intentional infliction of emotional distress claims against the Defendant.

Plaintiff claims that the Defendant employed "criminal tactics . . . such as false

---

[1]42 U.S.C. § 1983 provides as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

imprisonment, extortions, violence, thefts, false charges, false allegations, withholding evidence, subornation of perjury, intimidation . . . , [j]ury [t]ampering, [and] manufacturing evidence" against the Plaintiff and his family.  (Compl. at ¶ 11, 17.)  Plaintiff contends that in an effort to conceal these crimes and/or to protect himself and his associates from prosecution, Defendant used his office as the elected Commonwealth Attorney to falsely prosecute Plaintiff and then to deny Plaintiff access to the courts.   Specifically, Plaintiff claims that the Defendant engaged in prosecutorial misconduct in presenting evidence to the state grand jury that indicted him and his wife for theft related charges.  (Compl. at ¶ 45.) Plaintiff also claims that the Defendant failed to investigate and prosecute persons who were committing crimes against Plaintiff and his associates.  (Compl. at ¶ 13).  Plaintiff also alleges that the Defendant interfered with the Russell County grand juries by not permitting Plaintiff to present evidence to those grand juries.  (Compl. at ¶¶ 18, 23, 24, 25, 36, 37.) Plaintiff further accuses the Defendant of filing documents in other cases which were aimed at destroying Plaintiff's credibility or shielding Defendant's criminal activity.  (Compl. at ¶ 35.)  In order to completely understand the allegations contained in Plaintiff's complaint, a review of the events leading up to this motion is necessary.

Plaintiff, James S. Faller, moved from Florida [2] to Russell Springs, Kentucky, in April

_____

[2] While not directly related to the claims in the present case, the Plaintiff discusses at length in his Response details regarding his conviction in an unrelated case, United States v. James Stuart Faller, 154 Fed. Appx. 740 (11th Cir. 2005).  In 1997, Faller was indicted in the United States District Court for the Southern District of Florida for two counts of conspiracy to commit mail fraud and one count of conspiracy to commit money laundering.  Faller was accused of participating in a scheme to defraud people seeking rental capital loans in exchange for advance payments of a substantial fee.  Faller was convicted on May 26, 2000 and finally

of 2001 to operate a call center, CCC of Kentucky, Inc.  In May of 2001, CCC of Kentucky purchased a home on a one year land contract from Samuel Tarter.  In January of 2002, Tarter filed a civil action against CCC of Kentucky and Plaintiff claiming that they were delinquent in payments on the home.  Plaintiff represents that the circuit court judge ruled in favor of CCC of Kentucky on Tarter's claim.

Plaintiff contends that in retaliation for this adverse decision, Tarter made a complaint against Plaintiff for cutting trees on Tarter's property.  In July of 2002, a Russell County grand jury indicted Plaintiff for Criminal Mischief in the First Degree in violation of KRS § 512.020 for intentionally cutting trees on property owned by Tarter.  Following this indictment, Plaintiff alleges that he hired a forestry expert who determined that the trees in question were cut 15 to 25 years prior.  As a result of his expert's report, Plaintiff contends that he went to Defendant, demanded the charges be dropped, and Tarter charged with perjury. Plaintiff claims that Defendant refused and threatened Plaintiff with further charges.

In August of 2002, Plaintiff sought to present testimony to a Russell County grand jury.  Plaintiff waited in the hallway of the courthouse to see the grand jury and was permitted to present evidence to the grand jury.  Plaintiff contends that as a result of his testimony, the grand jury voted to instruct Defendant to get a special prosecutor and have

---

sentenced on February 20, 2003, to 24 months in prison.  Faller consistently maintained his innocence.  Faller has accused the Assistant United States Attorney of prosecutorial misconduct. The federal district judge presiding over Faller's case has questioned whether Faller might be merely a victim.  On September 27, 2005, the Eleventh Circuit Court of Appeals affirmed Faller's judgment of conviction.  Faller has submitted documents indicating that the Assistant United States Attorney in Florida had been in contact with Defendant Rogers in September of 2003.  (Matthew B. DeHart Aff. at ¶ 9.)

4

Plaintiff's case heard.  In February of 2003, a Russell County grand jury indicted Tarter for perjury in the first degree for making false statements before a Russell County grand jury with respect to Plaintiff's case, for false swearing at a deposition, and for criminal trespass for entering Plaintiff's home.

In July of 2003, Defendant hired Plaintiff's attorney, Matthew Leveridge, to become an Assistant Commonwealth Attorney.  According to Plaintiff, during this period of time representatives from the Commonwealth Attorney's office offered to drop the criminal charges against Plaintiff in exchange for Plaintiff dropping the criminal charges against Tarter.  On August 26, 2003, the Russell Circuit Court dismissed the indictment against Tarter stating in the Order of Dismissal "that the principal prosecuting witness, James Faller, . . . agreed to a dismissal of the action" in exchange for Tarter "agreeing to dismiss the pending action in the Russell Circuit Court against Mr. Faller."  (Plaintiff's Resp. at Ex. 18.)

Plaintiff alleges that in September of 2003, he requested assistance from the County Attorney's Office in Russell County regarding the theft of equipment and other assets, including stolen checks in excess of $100,000 from CCC of Kentucky.[3]  On September 15, 2003, Plaintiff's secretary hand delivered a letter to the County Attorney saying that Plaintiff had "paid all of the outstanding checks that [he had] been notified of."  (Plaintiff's Resp. at Ex. 19.)  On September 18, 2003, Plaintiff's employees filed numerous criminal complaints

---

[3]Kentucky Secretary of State business records reveal that CCC of Kentucky was organized on February 18, 2002.  James Faller was listed as the director and his wife, Tanya Faller, was listed as the president.

in the state district court after their payroll checks were allegedly returned for lack of sufficient funds.  On September 23, 2003, a Russell County grand jury issued a twenty-seven count indictment against Plaintiff and his wife on theft related charges.  The Fallers were charged with theft by deception, theft of services, and theft by failure to make required disposition of property.  Plaintiff contends that in presenting the testimony of these eighteen witnesses to the grand jury, Defendant suborned perjury because he knew that they were lying.[4]  Furthermore, Plaintiff alleges that Defendant had Plaintiff arrested the morning the grand jury convened in order to prevent him from testifying in front of the grand jury.  The Russell County Jail Daily Log and the Uniform Citation reflect that Plaintiff was arrested pursuant to an arrest warrant and booked into the Russell County Jail at 9:30 a.m. on September 23, 2003.  (Plaintiff's Resp. at Ex. 25, Ex. 27.)

Tonya Meece [5], the foreperson of the Russell County grand jury that indicted Plaintiff and his wife on the theft related charges, confirmed that a large number of witnesses appeared before the grand jury on September 23, 2003, seeking indictments against Faller and his wife because of insufficient payroll checks.  (Plaintiff's Resp. at Ex. 6, Meece Dep. at 6.)  Meece stated that after the witnesses testified, Defendant informed the grand jury that Plaintiff was outside the room and wanted "to come before the grand jury and give [his] side

---

[4]Plaintiff represents that the County Attorney's office has since issued arrest warrants for two of the 18 witnesses that testified.

[5]Meece was deposed by Plaintiff in an unrelated civil action.  Defendant challenges the ruling by the state court judge permitting her deposition.  The Court expresses no opinion on this matter.

6

of the story." (Id. at 21.)  Meece further testified that Rogers "told us as a grand jury, since [Faller was] not on the schedule, we had the right to choose whether or not for [Faller] to come before the grand jury.  And as far as I can remember, at that time, he left the room and left that decision in our hands." (Id. at 22.)  Meece stated that the grand jury deliberated on Plaintiff's request and voted not to hear from him.  (See id. and Meece's Aff. at Plaintiff's Resp., Ex. 21).  She testified that Defendant made no comments offering any opinion about the validity of any testimony.  (Id. at 10-13, 15, 18.)  At this time, criminal charges are still pending against the Fallers in the Russell Circuit Court on the theft related charges.

In March of 2005, Plaintiff contacted the Russell County grand jury foreperson, Keith Scholl. (Scholl Dep. at 5.)  Scholl testified that Plaintiff called Scholl and told Scholl he wanted to deliver a package for Scholl to present to the grand jury.  (Id. at 6-7.)  Scholl testified that Plaintiff came to Scholl's house and told Scholl that his family had been threatened, his wife had been threatened with rape and murder, and he asked Scholl to give some affidavits to the grand jury. (Scholl Dep. at 8-9.)  Scholl testified that the next day Scholl informed Tony Kerr, the clerk of the Russell Circuit Court, that he had received a package from Plaintiff.  Kerr informed Defendant, who in turn, informed the Circuit Judge. The Judge met with Scholl and told Scholl that he needed to present the package to the grand jury and ask them if they wanted to call Plaintiff.  Scholl stated that Defendant informed the grand jury that both the county attorney and the assistant county attorney had some information related to Plaintiff's request.  Scholl testified that the grand jury heard testimony from both attorneys.  Scholl further testified that the grand jury, outside of the presence of

Rogers, looked through the materials Plaintiff had given Scholl, and decided they did not want to call Plaintiff as a witness.  (Id. at 14, 22-23.)  Scholl testified that Defendant did not make any comments about Plaintiff's history or express an opinion on whether the grand jury should hear testimony from Plaintiff.  (Id. at 15.)  The grand jury took no action on the information presented by Plaintiff.

In April of 2005, Plaintiff sought the assistance of the Prosecutor's Advisory Committee (PAC) for a special prosecutor pursuant to KRS § 715.15.[6]  (Compl. at 27.)  On April 14, 2005, PAC conducted a hearing regarding Plaintiff's request "to investigate offenses committed in Russell County and to present the matter to a Russell County Grand Jury." (Defendant's Motion, Ex. E).  Plaintiff asserts that at the hearing Defendant informed PAC that he would recuse from the criminal theft case against Plaintiff because of a conflict of interest.  There is no indication in the complaint or in the parties' briefs regarding any

---

[6]The Court was unable to locate KRS § 715.15.  The Court believes the Plaintiff intended to cite KRS § 15.715 which provides in part as follows:

(1) In the event of the incapacity, refusal without sufficient grounds, inability, conflict of interest of the local prosecutor, or his failure to act in a certain case or cases, the council may authorize, by the vote of no less than five (5) of its members, the Attorney General to initiate, intervene, or supersede a local prosecutor for the purpose of prosecuting the criminal business in question of the Commonwealth in that circuit or district after due notice having been given to the local prosecutor.

(2) When the Attorney General shall proceed under subsection (1) of this section, he shall petition the Circuit Court of that circuit to disqualify the county attorney or Commonwealth's attorney for good cause shown, when the county attorney or Commonwealth's attorney refuses to disqualify himself. The action of the Circuit Court shall be subject to review according to the Rules of the Supreme Court.

decision by the PAC.   However, on June 14, 2005, the Commonwealth Attorney's Office, including Defendant, recused itself from the criminal action against Plaintiff based upon Assistant Commonwealth Attorney Matthew Leveridge's association with Plaintiff as agent of CCC of Kentucky until February of 2005.

On September 27, 2005, Plaintiff again requested to address the Russell County grand jury.  Plaintiff appeared in the grand jury waiting room and requested Defendant to provide a letter to the grand jury.  (Compl. at ¶ 37.)  According to Plaintiff, Defendant refused to allow Plaintiff access to present the letter because Defendant knew the "envelope contained material concerning the allegations of criminal activity by [Defendant's] associates and himself."  (Compl. at ¶ 38.)

As a result of Defendant's alleged actions, Plaintiff filed suit in October of 2005.  The Defendant now moves to dismiss the complaint, or in the alternative, for summary judgment arguing that the Plaintiff's claims are barred by the statute of limitations, that Plaintiff fails to state any cognizable claims, and that Plaintiff's § 1983 claims are barred by prosecutorial absolute immunity.  Defendant further asserts that Plaintiff's official capacity claims are barred by Eleventh Amendment sovereign immunity.  The Court shall address the Defendant's arguments in turn.

## DISCUSSION

## 1.  Statute of Limitations

Federal courts apply the state personal injury statute of limitations for all actions brought under the federal civil rights statutes.  Wilson v. Garcia, 471 U.S. 261, 280 (1985).

9

The appropriate statue of limitations for personal injury actions arising in Kentucky is one year from the date the cause of action accrues.  KRS § 413.140(1)(a).  Defendant argues that to the extent that Plaintiff complains about the Defendant's actions, or failure to act, occurring more than one year before Plaintiff filed his complaint, Plaintiff's civil rights claim is time barred and should be dismissed.

Plaintiff disagrees arguing that the last two "overt acts" occurred on March 22, 2005, and September 27, 2005 when the Defendant prevented Plaintiff from addressing the grand jury regarding allegations of Defendant's prosecutorial abuse.  Further, in his complaint, Plaintiff alleges that the Defendant participated in an ongoing, continual pattern of misconduct up to and including actions occurring as late as September of 2005.  Thus, the Court construes Plaintiff's argument to be that the one-year statute of limitations has been tolled by continuing violations of Plaintiff's civil rights.  A continuing violation must "be continual unlawful acts" rather than "continual ill effects from an original violation."  Bell v. Rowe, 178 F.3d 1293, 1999 WL 196531, *2 (6th Cir. March 22, 1999)(citing McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988)).  Given that Plaintiff has articulated alleged unlawful acts by the Defendant in March and September of 2005, the Court declines to dismiss Plaintiff's complaint on this basis at this stage of the litigation.  Choate's Air Conditioning & Heating, Inc. v. Light, Gas, Water Division of City of Memphis, 16 Fed. Appx. 323 (6th Cir. June 22, 2001).

**2.    § 1983 Prosecutorial Abuse**

In Count of 1 of his complaint, Plaintiff accuses the Defendant of "prosecutorial

abuse" and violating his civil rights under 42 U.S.C. § 1983 for presenting evidence  which

he "knew to be highly inaccurate" or "diametrically opposed to the truth" and of making

"numerous false sworn statements in official proceedings."  Essentially, the Plaintiff claims

that Defendant engaged in prosecutorial misconduct, malicious prosecution, and abuse of

office by presenting false testimony to the grand jury leading to his indictment, interfering

with two or more grand juries to prevent Faller from presenting evidence of Defendant's

prosecutorial misconduct, and failing or refusing to prosecute "conspirators" who caused

Plaintiff to be indicted for theft.

Commonwealth Attorney Rogers claims that he is entitled to absolute prosecutorial

immunity.  Absolute prosecutorial immunity "is a common law principle that shields a

prosecutor from §1983 liability." Cooper v. Parrish, 203 F.3d 937, 946 (6th Cir. 2000), cert.

denied, 531 U.S. 877 (2000)(quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)).

"The Supreme Court has endorsed a 'functional' approach for determining whether an

official is entitled to absolute prosecutorial immunity explaining that a court should look to

'the nature of the function performed, not the identity of the actor who performed it.'"

Cooper, 203 F.3d at 946-47 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).  This

functional approach focuses on whether the prosecutor's activities are "intimately associated

with the judicial phase of the criminal process." Imbler, 424 U.S. at 430.  See also Holloway

v. Brush, 220 F.3d 767, 774  (6th Cir. 2000).  The Supreme Court has held that a prosecutor

is absolutely immune for the initiation and pursuit of a criminal prosecution. Imbler, 424

U.S. at 431.  "Acts which occur in the course of the prosecutor's role as advocate are entitled

to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer." Kean v. Anderson, 2005 WL 1949530 (W.D. Mich. August 15, 2005)(citing Buckley v. Fitzsimmons, 509 U.S. 259, 273, 276-278 (1993)).

The Defendant's conduct of which Plaintiff complains is unquestionably protected by absolute prosecutorial immunity. Defendant's initiation and presentation of cases, including those against Plaintiff, to a grand jury clearly falls within the traditional function of the prosecutor and is shielded by absolute immunity. Imbler, 424 U.S. at 988.   While Plaintiff alleges that Defendant initiated a criminal action against Plaintiff in retaliation for Plaintiff's civil lawsuit against Defendant's business associate and suborned perjury at two of the grand juries in question, "[a]bsolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." Kean, 2005 WL 1949530, *3. The decision to prosecute "'even if malicious and founded in bad faith, is unquestionably advocatory and at the heart of the holding in *Imbler*.'" Id. (quoting Grant v. Hollenbach, 870 F.2d 1135, 1138 (6th Cir. 1989)(county prosecutors were absolutely immune from civil rights suit alleging that they conspired with former criminal defendant's wife and knowingly brought false charges of child abuse against the former defendant)); Eldridge v. Gibson, 332 F.3d 1019, 1021 (6th Cir. 2003);   Ireland v. Tunis, 113 F.3d 1435, 1447 (6th Cir. 1997)(holding that the prosecutor was entitled to absolute immunity notwithstanding alleged political motivations for his actions); see also Mowbray v. Cameron Co. Tex., 274 F.3d 269, 276 (5th Cir. 2001);   Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004).   Courts have

consistently recognized that even the knowing presentation of false testimony to a grand jury or a trial jury are actions protected by absolute immunity. See Spurlock v. Thompson, 330 F.3d 791, 797-98 (6th Cir. 2004); Imbler, 424 U.S. at 413, 430; Buckley v. Fitzsimmons, 509 U.S. 259, 267 n. 3 (1993).

Defendant is also absolutely immune from suit for his refusal to take action on Plaintiff's behalf, for his refusal to dismiss the charges against Plaintiff, and for his decision not to allow Plaintiff to present evidence independently to the Russell County grand jury. See e.g. Johns v. Bonnyman, 109 Fed. Appx. 19, 22 (6th Cir. 2004). Prosecutorial immunity extends to a prosecutor's decision on whether to prosecute a case or what evidence to present to a grand jury. See Ireland v. Tunis, 113 F.3d 1435, 1446 (6th Cir. 1997), cert. denied, 522 U.S. 996 (1997). Furthermore, a prosecutor is not required to present exculpatory evidence to a grand jury. See Cousin v. Small, 325 F.3d 627, 635 (5th Cir. 2003), cert. denied, 540 U.S. 826 (2004). Thus, all of the Plaintiff's claims against the Defendant in his individual capacity related to Defendant's conduct before the grand juries in question fall squarely under the prosecutorial absolute immunity recognized in Imbler.

Plaintiff argues in response to the motion to dismiss and/or for summary judgment that immunity does not protect the actions of Defendant given the holding in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff asserts that under Bivens it is well established that any immunity is void when any person, State or Federal, regardless of position or stature, acts in capacities to benefit or in this case to protect their own personal interest(s) or that of their friends or business associates.

13

Plaintiff's reliance on <u>Bivens</u> is misplaced. The Supreme Court in <u>Bivens</u> held that a federal cause of action existed against federal employees in their individual capacities for a violation of the Fourth Amendment guarantee against unreasonable searches and seizures. Courts have described a <u>Bivens</u> action as " a judicially created remedy for the recovery of damages, designed to vendicate violations of constitutional rights by **federal** actors."   <u>Brewster v. Cooper Industries, Inc.</u>, 2005 WL 2403734, * 3 (E.D. Ky. September 28, 2005)(citing <u>Bivens</u>, 403 U.S. at 395-97) (emphasis added).   In fact, the Supreme Court in <u>Bivens</u> declined to discuss whether the defendant federal agents would be protected by any immunity because the Court of Appeals had not addressed the issue.

Finally, while the Plaintiff argues that it would be unjust to grant prosecutorial immunity to the Defendant for his conduct, the Supreme Court and Sixth Circuit precedent provides otherwise. For example, in <u>Imbler</u>, the Supreme Court recognized that prosecutorial absolute immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." <u>Imbler</u>, 424 U.S. at 427.

For these reasons set forth above, the Court finds that the Defendant is immune from Plaintiff's suit for monetary damages and grants summary judgment in favor of the Defendant in his individual capacity on Count 1 of the Plaintiff's complaint.[7]

---

[7]Absolute prosecutorial immunity may also protect the Defendant from some of the remaining claims contained in the Plaintiff's complaint. However, out of an abundance of caution, the Court will address the remaining claims on their merits.

3.     **Hobbs Act Claim**

Plaintiff alleges in Count 2 of his complaint that the Defendant violated the Hobbs

Act, 18 U.S.C. § 1951.  Title 18 U.S.C. § 1951 provides in part:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or
> the movement of any article or commodity in commerce, by robbery or
> extortion or attempts or conspires so to do, or commits or threatens physical
> violence to any person or property in furtherance of a plan or purpose to do
> anything in violation of this section shall be fined under this title or imprisoned
> not more than twenty years, or both.

18 U.S.C. § 1951(a).  Specifically, the Plaintiff alleges that the activities of the Defendant

"amounts to . . . obstruction of justice, unlawful coercion and conspiracy to obstruct justice

under 18 U.S.C. Section 1951" (Compl. at ¶ 49) and "fall within the definition of 'robbery'

as well as 'extortion'" as those terms are defined under 18 U.S.C. § 1951 (Compl. at ¶ 53).

"[U]nless there is clear congressional intent to provide a civil remedy, a plaintiff

cannot recover civil damages for an alleged violation of a criminal statute."  Johnson v.

Cullen, 925 F. Supp. 244, 251 (D. Del. 1996).  "[F]ederal courts have consistently found that

the Hobbs Act does not support a private cause of action."  Campbel v. Austin Air Systems,

Ltd., 2005 WL 2405997, *8 (W.D.N.Y. September 29, 2005).  See also Moore v. Garner,

2005 WL 1022088, *4 (E.D. Tex. January 1, 2005); Barge v. Apple Computer, 1997 WL

394935 (S.D.N.Y. July 15, 1997), aff'd, 164 F.3d 617 (2d Cir. 1998); Bajorat v. Columbia-

Breckenridge Development Corp., 944 F. Supp. 1371 (N.D. Ill. 1996); John's Insulation, Inc.

v. Siska Constr. Co., Inc., 774 F. Supp. 156, 163 (S.D.N.Y. 1991); Peterson v. Philadelphia

Stock Exch., 717 F. Supp. 332, 335-36 (E.D. Pa. 1989); Creech v. Federal Land Bank of

Wichita, 647 F. Supp. 1097, 1099 (D. Colo. 1986).   For this reason, Count 2 of Plaintiff's

complaint alleging a violation of the Hobbs Act is dismissed with prejudice.

**4.      Section 1981 Claim**

Plaintiff alleges in Count 3 of his complaint that the Defendant violated 42 U.S.C. §

1981.  Specifically, Plaintiff asserts that "[a]ll of the activities alleged herein . . . are an

unlawful infringement of Plaintiffs' rights to enforce contracts and be parties to private

litigation without interference by defendants under color of law." (Compl. at ¶ 59.)   Section

1981(a) provides that:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.  Title 42 U.S.C. § 1981 of the United States Code prohibits intentional

race discrimination in the making and enforcing of contracts with both public and private

actors.   Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 867-68 (6th Cir.2001).   The

statute's protection extends to "the making, performance, modification, and termination of

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the

contractual relationship." 42 U.S.C. § 1981(b); Pilon v. Saginaw Valley State University, 298

F. Supp. 2d 619 (E.D. Mich. 2003).  Section 1981 prohibits discrimination on the basis of

race against all persons, including whites.  See  McDonald v. Santa Fe Trail Transportation

Co., 427 U.S. 273 (1976); Winston v. Lear-Siegler, Inc., 558 F.2d 1266, 1268 (6th Cir.1977).

16

In order to state a claim under § 1981, a plaintiff is required to allege discrimination on the basis of race. Ana Leon T. v. Federal Reserve Bank of Chicago, 823 F.2d 928, 931 (6th Cir.1987), cert. denied, 484 U.S. 945 (1987). Plaintiff alleges nothing in his complaint, or his briefs for that matter, which would support a claim of race discrimination against the Defendant. For this reason, Count 3 of Plaintiff's complaint alleging a violation of 42 U.S.C. § 1981 is dismissed with prejudice.

**5.     Denial of Sixth Amendment Right to Equal Protection of the Law**

Plaintiff alleges in Count 4 of his complaint that the activities of the Defendant "amounts to a violation of 42 U.S.C. Section 1983 . . . as an infringement, of Plaintiffs' [Sixth] Amendment right to equal protections of the law." (Compl. at ¶ 62.)    Further, Plaintiff asserts that all the activities alleged "are an unlawful infringement of plaintiffs' Sixth Amendment right . . . to petition the Courts for a redress of their grievances." (Compl. ¶ 63.)

The Sixth Amendment[8] does not grant Plaintiff any right to equal protection of the law, nor does Plaintiff make any factual allegations to support an equal protection claim under any other provision of the Constitution of the United States.

---

[8]The Sixth Amendment provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.
U.S. Const. amend. VI.

17

In as much as the Plaintiff complains about being denied access to certain grand juries, Kentucky courts have consistently held that a defendant has no constitutional right to appear personally or by counsel, <u>Stopher v. Commonwealth</u>, 57 S.W.3d 787, 794 (Ky. 2001), <u>cert. denied</u>, 535 U.S. 1059 (2002), or to present evidence at a grand jury proceeding, <u>Nelson v. Shake</u>, 82 S.W.3d 914, 916 (Ky. 2002), or to determine what charges will be pursued for prosecution and therefore presented to a grand jury.  <u>See also</u> <u>United States v. Williams</u>, 504 U.S. 36, 51-52 (1992).  Significantly, the Kentucky Supreme Court stated that "[t]here is no constitutional right to appear before the grand jury; RCr 5.08 is an indulgence of this Court." <u>Stopher</u>, 57 S.W.3d at 794.  Further, Plaintiff has presented no authority that permits a private citizen to present evidence before the grand jury or requires a prosecutor to permit a private citizen to do so.

For these reasons, Count 4 of Plaintiff's complaint alleging "Denial of Sixth Amendment Right to Equal Protection of the Law" is dismissed with prejudice.

**6.     Official Capacity Claims**

Plaintiff sues Defendant in both his official and individual capacity.  Pleading official capacity is another way of pleading suit against the entity of which a defendant is an agent, official, or employee.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Because Defendant Rogers is the Commonwealth Attorney for Russell County, he is an employee of the state and the official capacity claim is a claim against the Commonwealth of Kentucky.  <u>See</u> <u>e.g.</u>, <u>Sutton v. Lewis</u>, 2005 WL 1389179 (W.D. Ky. June 6, 2005).

"State officers sued for damages in their official capacity are not 'persons' within the

meaning of § 1983 because they assume the identity of the government that employs them, in this case, the Commonwealth of Kentucky; and states, in turn, are immune from suits for money damages under the Eleventh Amendment to the federal Constitution." Sutton v. Lewis, 2005 WL 1389179, *3 (W.D. Ky. 2005)(citing Hafer v. Melo, 502 U.S. 21, 27 (1991); Rodgers v. Banks, 344 F.3d 587 (6th Cir. 2003)). Therefore, Plaintiff's claims against Defendant Rogers in his official capacity for monetary damages is dismissed with prejudice.

However, suits under § 1983 are cognizable against a state official in his or her official capacity when that official is sued for injunctive relief.  In his complaint, Plaintiff seeks "a preliminary injunction and permanent injunction prohibiting Defendant from continuing with his criminal conduct in obstructing the Plaintiff from presenting his complaints to the Russell County Grand Jury for their consideration pursuant to RCr 5 and other applicable state and Federal Constitutional rights." (Compl. at ¶ 48.)  In his prayer for relief, Plaintiff likewise seeks "an injunction in favor of each of the Plaintiffs against the Defendants in Counts 1 through 48 prohibiting the Defendant directly and through co-conspirators from any further criminal conduct against the Plaintiff or his Family and Associates." (Prayer for Relief at ¶ 4.)

In as much as Plaintiff is requesting injunctive relief which would permit Plaintiff to present evidence to the Russell County grand jury, the Court has been unable to ascertain any constitutional right to permit a private citizen to present evidence to the grand jury. See, e.g. Stopher, 57 S.W.2d at 794.  Furthermore, in as much as the Plaintiff seeks to prohibit the continued prosecution of the current criminal action against him pending in the Russell

19

County Circuit Court, the Court finds this request prohibited by <u>Younger v. Harris</u>, 401 U.S. 37, 46 (1971).   Under the abstention doctrine announced in <u>Younger</u>, federal courts should abstain from deciding a matter that implicates pending state criminal proceedings. 401 U.S. at 43-45. The three factors that support <u>Younger</u> abstention are present in this case.  First, there is no dispute that there is an ongoing state judicial proceeding.  <u>See</u> <u>Commonwealth of Kentucky v. Faller</u>, Russell Circuit Court Criminal Action No. 03-CR-84.   Second, state criminal proceedings involve important state interests.  <u>See</u>, <u>e.g.</u>, <u>Cooper v. Parrish</u>, 203 F.3d 937, 954 (6th Cir.), <u>cert. denied</u>, 531 U.S. 877 (2000). Third, the state court proceeding provides an adequate opportunity to raise constitutional challenges to his prosecution in the criminal action.  <u>See</u> <u>Gonnella v. Johnson</u>, 115 Fed. Appx. 770, 771-772 (6th Cir. 2004).  In fact, Plaintiff raised constitutional challenges to the prosecution of the current criminal case in the state circuit court.  (DN 5, Ex. A, Faller's Motion to Dismiss Indictment filed in state court.)

For these reasons, the Court grants summary judgment in favor of the Defendant in his official capacity.  Thus, Plaintiff's claims against the Commonwealth of Kentucky for monetary damages and against Larry Rogers, in his official capacity, for injunctive relief are dismissed with prejudice.

## 7.    State Law Claims

Having dismissed the Plaintiff's federal claims, the Court declines to exercise pendent jurisdiction over Faller's and the other Plaintiffs' state law claims.  <u>See United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1966) ("[I]f the federal claims are dismissed before trial

20

... the state claims should be dismissed as well." <u>Id.</u> at 726.).  Therefore, Plaintiffs' pendent state law claims are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Defendant, Larry Rogers, in his individual capacity and in his official capacity as Commonwealth Attorney, [DN 5] is **GRANTED**.  Plaintiff's federal claims are dismissed with prejudice.  The state law claims are dismissed without prejudice.  A judgment will be entered consistent with this Opinion.

cc: counsel of record
    James S. Faller, *pro se*